NUMBER 13-03-258-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      

SYLVIA MENCHACA BALLI 
AGUILLERA,                                                                               Appellant,

v.

THE JOHN G. AND MARIE STELLA 
KENEDY MEMORIAL FOUNDATION,                                        Appellee.
                                                                                                                                      

On appeal from the 105th District Court of Kenedy County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Yañez, Rodriguez and Garza 
Opinion by Justice Garza

          The primary issue in dispute in the proceedings underlying this appeal is ownership
of 83,936.40 acres of largely undeveloped, rural property located in Kenedy County, Texas,
known as “La Barreta.” Appellants, Sylvia Menchaca Balli Aguilera, et. al. (“the Ballis”), are
various heirs of the brother of the original owner of La Barreta and assert a continuing
ownership interest in La Barreta through a chain of title originating with a land grant by the
King of Spain and including a document allegedly created in 1804 (“the 1804 Document”). 
On appeal, the Ballis argue, inter alia, that the trial court erroneously granted summary
judgment in favor of appellee, the John G. and Marie Stella Kenedy Memorial Foundation
(“the Foundation”). 
          The Ballis raise six issues on appeal: (1) the trial court erred in striking the expert
testimony of Richard Santos concerning the 1804 Document; (2) the trial court erred in
excluding the 1804 Document; (3) the trial court erred in granting the Foundation’s no-evidence motion for summary judgment; (4) the trial court erred in granting the
Foundation’s traditional motion for summary judgment; (5) the trial court erred in granting
the Foundation title to 83,936.40 acres out of the La Barreta Grant; and (6) the trial court
erred in considering untimely evidence filed by the Foundation.  
          As cross-appellant, the Foundation argues that the trial court erred by ruling that it
could not recover attorney’s fees under the declaratory judgment act. 
          For the reasons that follow, we affirm the trial court’s judgment. 
Background 
          In the early 1800s, a landowner named Jose Francisco Balli donated a portion of
his property to the village of Reynosa, which had to be relocated and rebuilt following a
flood. To demonstrate his gratitude, the King of Spain granted La Barreta to Jose
Francisco. The royal grant to Jose Francisco was made in 1804, but the official colonial
survey of La Barreta was apparently not completed until 1809. Now, approximately two
hundred years later, two separate groups, the Ballis and the Foundation, claim ownership
of La Barreta through two separate lines of title. 
          The Ballis assert ownership of La Barreta as follows: in 1804, following the initial
grant from the King of Spain, Jose Francisco conveyed La Barreta to his brother, Jose
Manuel Balli. A document describing this sale, referred to throughout this litigation as the
1804 Document, was found by a Balli family member and is being relied upon as proof of
this sale. In 1855, Linilo Ynojosa, Jose Manuel’s nephew who then owned the property,
leased the land to Miflin Kenedy, who primarily used the land for cattle-ranching. In 1898,
the Balli family again leased the property to the Kenedy family, entering into a fifty-year
lease agreement, documentation of which was not offered to the trial court. At the
expiration of this lease in 1949, Gustavo Munoz, the Balli heir to the property at the time,
entered into a second fifty-year lease with Sarita Kenedy East, the heir of Miflin Kenedy.
The Ballis allege that during the Kenedy leasehold, the Balli family continued to
occasionally visit La Barreta on hunting and fishing trips. The Balli family also alleges that
pursuant to their lease agreement, the Kenedy family was required to pay taxes on the land
and allow the Ballis to select a few cattle out of the Kenedy herds each year as rent,
though this latter provision may never have been enforced. 
          The Foundation disputes the Ballis’ chain of title and asserts its own version of La
Barreta’s ownership history. According to the Foundation, Jose Francisco Balli never sold
La Barreta to Jose Manuel Balli, and at Jose Francisco’s death, the property passed
through intestacy to his son, Don Pedro Balli. Don Pedro then sold La Barreta to Juan
Bautista Cantu on or around 1828. At Juan Bautista’s death, La Barreta was inherited by
Ramon Cantu. In 1852, Ramon sold the property to James H. Durst. At some point
following this sale, the land was partitioned by three men: John B. Armstrong, James Durst
(the son of James H. Durst), and Miflin Kenedy. Durst’s portion was later sold to Kenedy,
and most of the original La Barreta grant was eventually inherited by Sarita Kenedy East. 
Upon her death, title to La Barreta went to the Foundation. Much of this line of succession
was discussed by the Texas Supreme Court in MacKay v. Armstrong, 19 S.W. 463,
464–66 (Tex. 1892).
          Because of these inconsistent and irreconcilable claims of ownership, the
Foundation initiated a declaratory judgment action seeking to remove any cloud on its title
to La Barreta cast by the Ballis. The Foundation also sought recovery of its costs and
reasonable attorney’s fees. The Ballis counterclaimed with a trespass-to-try-title action. 
The Foundation then filed traditional and no-evidence motions for summary judgment, a
motion to strike the expert testimony of two Balli witnesses, and a motion to exclude
several documents used by the Ballis to establish their ownership of La Barreta (i.e., the
1804 Document and the 1949 lease executed by Gustavo Munoz). The Ballis also filed
a motion for summary judgment, which argued that as a matter of law, the Foundation
could not recover attorney’s fees under the declaratory judgment act because the
declaratory relief requested related to an ownership interest in land. The trial court granted
all the motions for summary judgment filed by both parties, as well as the Foundation’s
motions to strike the expert testimony and exclude the documents. Both parties
subsequently appealed to this Court.  I. Exclusion of Evidence
A. Standard of Review
          The Ballis’ first two issues challenge the trial court’s rulings striking the expert
testimony by Richard Santos and excluding the 1804 Document, respectively. The trial
court has broad discretion to determine the admissibility of evidence. Exxon Pipeline Co.
v. Zwahr, 88 S.W.3d 623, 629 (Tex. 2002). An appellate court must uphold the trial court’s
evidentiary ruling if there is any legitimate basis for the ruling. N. Am. Refractory Co. v.
Easter, 988 S.W.2d 904, 914 (Tex. App.—Corpus Christi 1999, pet. denied). To obtain
reversal of a judgment based on error in the admission or exclusion of evidence, an
appellant must show that the trial court’s ruling was in error and that the error probably
caused the rendition of an improper judgment. Id. (citing Tex. R. App. P. 44.1(a); McCraw
v. Maris, 828 S.W.2d 756, 757 (Tex. 1992)). When the issue is exclusion of evidence, the
reviewing court must review the entire record to determine if error occurred. Id. 
B. Expert Testimony of Richard Santos 
          A witness’s expert testimony is admissible if the witness is qualified as an expert,
the opinion is relevant to the issues in the case, and the opinion is based on a reliable
foundation. See Tex. R. Evid. 702; Zwahr, 88 S.W.3d at 629. The Foundation’s motion
to strike challenged Santos on each of these requirements, arguing that (1) Santos was not
qualified as an expert in the area of expertise to which he sought to testify and (2) his
opinion was unreliable and would not assist the jury in resolving any issues of fact. In
particular, the Foundation complained that Santos had “no training, experience, education,
or specialized knowledge in the area of Spanish colonial law.” In addition, according to the
Foundation, Santos’s methodology and ultimate opinions as to the legal effect of the 1804
document were based upon unsupported assumptions as to Spanish law in the early
nineteenth century. The trial court granted the Foundation’s motion to exclude, ruling that
Santos was not qualified to offer opinions on any legal issues such as the validity or legal
effect of the 1804 Document. 
          On appeal, the Ballis argue that the trial court abused its discretion because
Santos’s testimony was not offered as an expert legal opinion but merely as testimony to
assist the trier of fact in determining the factual authenticity of the 1804 Document. At
most, the Ballis argue, Santos’s testimony contained elements of both law and fact related
to the authenticity of the 1804 Document and should have been admitted under Birchfield
v. Texarkana Mem’l Hosp., 747 S.W.2d 361, 365 (Tex. 1987) and Rio Grande Valley Gas
Co. v. City of Edinburg, 59 S.W.3d 199, 211–12 (Tex. App.—Corpus Christi 2000), aff’d
in part, rev’d in part, 129 S.W.3d 74 (Tex. 2003). 
          We disagree that Santos offered only non-legal testimony. At the hearing on the
Foundation’s motion to exclude, Santos testified as follows:
 
Q. [By counsel for the Ballis] [W]ith regard to your expert qualifications, do
you feel that you are qualified – do you feel you have specialized knowledge
that will assist the jury on the very matters in which you’re testifying as an
expert witness in this case, namely the 1804 document?
 
A. Yes, sir.
 
Q. Okay. And does that – does your expertise with regard to the Spanish
Colonial period include the laws, applicable laws to the land transfer in issue
in this case?
 
A. Yes, sir. 
 
Santos also offered the following testimony:

Q. [By counsel for the Ballis] [I]t has been suggested by the Foundation that
because you’re not a lawyer, you have no specialized knowledge that could
assist the jury [to] resolve some issues, especially with regard to the 1804
document in this case. And I would like to hear your response to that, sir.
 
A. I’ve never presented myself or introduced myself or pretended to be a
lawyer or an attorney. I was hired in this case, . . . as an expert on the
validity of the document and as a translator, not as an attorney or paralegal. 
So I was hired to authenticate the 1804 document, and that is what I have
done.
 
Q. Okay. And what is your opinion with regard to the validity and
authentication of the 1804 document?
 
A. It is my professional opinion that it is the government copy that should
have been filed in the protocols of the archive of Reynosa. Somehow or
another somebody took it out.    

This testimony demonstrates that the Ballis offered Santos’s testimony not solely to
establish the factual authenticity of the 1804 Document but also to prove its validity and
legal effect. The Ballis complain that the trial court erred by excluding Santos’s testimony
regarding the factual authenticity of the 1804 Document, but the trial court only excluded
Santos’s testimony as to the validity and legal effect of the 1804 Document. The trial
court’s order did not exclude Santos’s testimony or preclude consideration of it as to the
factual authenticity of the document. We therefore overrule the Ballis’ first issue. In doing
so, we note that the Ballis have not argued on appeal that Santos was qualified to give
expert opinion testimony on the validity and legal effect of the 1804 Document. 
Accordingly, any error committed by the trial court in excluding Santos’s opinions as to the
validity and legal effect of the 1804 Document has not been presented for appellate review. 
See Tex. R. App. P. 38.1(h). 
C. 1804 Document 
          In their second issue, the Ballis complain that the trial court committed reversible
error by granting the Foundation’s motion to exclude the 1804 Document from evidence. 
The parties agree that the 1804 Document is hearsay. See Tex. R. Evid. 801. Under a
well-recognized exception to the hearsay rule, the recitals in an ancient document are
admissible as evidence of the facts recited, provided that the instrument (1) is over twenty
years old, (2) comes from proper custody, and (3) is not suspicious in appearance. See
Tex. R. Evid. 803(16), 901(b)(8); Zobel v. Slim, 576 S.W.2d 362, 365 (Tex. 1978); Guthrie
v. Suiter, 934 S.W.2d 820, 825 (Tex. App.—Houston [1st Dist.] 1996, no writ). In addition,
all hearsay exceptions require a showing of trustworthiness. Urquhart v. Antrum, 776
S.W.2d 595, 597 (Tex. App.—Houston [14th Dist.] 1988, no writ) (citing Robinson v.
Harkins & Co., 711 S.W.2d 619, 621 (Tex. 1986)). The proponent of hearsay has the
burden of establishing that the testimony fits within an exception to the general rule
prohibiting the admission of hearsay evidence. Volkswagen of Am., Inc. v. Ramirez, No.
02-0557, 2004 Tex. LEXIS 1429, at *22 n.4, 48 Tex. Sup. Ct. J. 256 (Tex. Dec. 31, 2004)
(citing Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298, 301 (Tex. 1962)); see also Ortega
v. State, 126 S.W.3d 618, 620 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).           At trial and on appeal, the Ballis argued that the 1804 Document qualified under the
ancient document exception to the hearsay rule and should have been admitted into
evidence. The trial court granted the Foundation’s motion to exclude the 1804 Document,
ruling that it was (1) not produced in admissible form, (2) unreliable, (3) found and
produced under suspicious circumstances, and (4) not found where it should have been
found. The trial court also ruled that, “as a matter of law, the 1804 Document did not
convey and was legally ineffective to convey, any title to Jose Manuel Balli Villareal under
the applicable Spanish Colonial law and is therefore invalid, void and of no force and
effect.” This last statement regarding the legal effect of the 1804 Document controls not
only the Ballis’ second issue but their third, fourth, and fifth issues as well. It will therefore
be the focus of this opinion. 
          A trial court’s ruling on the admissibility of evidence is not a basis for reversal unless
the ruling probably caused the rendition of an improper judgment. See Tex. R. App. P.
44.1(a). Thus, even if the trial court erred by excluding the 1804 Document, the error may
not be reversible error. See id. 
          As explained below, this Court has reviewed the Foundation’s traditional motion for
summary judgment, the Ballis’ response, and the evidence before the trial court. We
conclude that the Foundation established its entitlement to summary judgment regardless
of the 1804 Document’s admissibility. Even if the trial court erred by excluding the 1804
Document, it did not commit reversible error because summary judgment in favor of the
Foundation was proper even if the document had been used as summary judgment
evidence. Thus, any error in the exclusion of the 1804 Document did not lead to the
rendition of an improper judgment and is not reversible error. See id. The Ballis’ second
issue is overruled. 
II. Summary Judgment 
          In their third and fourth issues, the Ballis argue that the trial court erred by granting
the Foundation’s no-evidence and traditional motions for summary judgment, respectively. 
In their fifth issue, the Ballis complain that the trial court erred by granting the Foundation
title to La Barreta. Because we conclude that the trial court’s traditional summary judgment
in favor of the Foundation was proper, we do not reach the trial court’s no-evidence
summary judgment. Accordingly, for the reasons that follow, we overrule the Ballis’ fourth
and fifth issues but do not reach their third issue. See Tex. R. App. P. 47.1. 
          We review summary judgment de novo. Garrod Invs., Inc. v. Schlegel, 139 S.W.3d
759, 762 (Tex. App.—Corpus Christi 2004, no pet.). In reviewing a traditional summary
judgment, we must determine whether the summary judgment proof establishes as a
matter of law that there is no genuine issue of material fact as to one or more of the
essential elements of the plaintiff’s cause of action. Id. We take as true all evidence
favorable to the non-movant and indulge every reasonable inference in the non-movant’s
favor. Id. 
          The Foundation’s traditional motion for summary judgment asserted the following
grounds for summary judgment: (1) the undisputed summary judgment evidence
conclusively establishes the Foundation’s title to La Barreta is superior to that of the Ballis;
(2) adverse possession, under the five, ten, and twenty-five year statutes, establishes the
Foundation’s title as a matter of law; (3) regardless of the validity or authenticity of the
Ballis’ title documents, the presumed grant doctrine mandates summary judgment in favor
of the Foundation; (4) the documents which cloud the Foundation’s title to La Barreta do
not create a genuine issue of material fact as to the Foundation’s superior title to La
Barreta; and (5) given the foregoing, the Ballis’ counterclaim for trespass to try title fails as
a matter of law. 
          The trial court awarded summary judgment to the Foundation on the alternative
bases of (1) superior title, (2) adverse possession, and (3) presumed grant, in support of
which the Foundation produced a substantial body of evidence. On appeal, the Ballis
argue only that the trial court erred by granting the Foundation’s traditional motion for
summary judgment because genuine issues of material fact exist as to the Foundation’s
adverse possession of La Barreta. The Ballis have not addressed the Foundation’s claims
of superior title to La Barreta and title by presumed grant, except indirectly by their second
issue, in which they challenge the trial court’s exclusion of the 1804 Document. We find
it particularly noteworthy that the Ballis have not challenged the Foundation’s summary
judgment evidence on its theories of superior title and presumed grant. We have reviewed
the evidence and find it sufficient to prove these theories. 
          Assuming, for the sake of argument, that the 1804 Document should have been
admitted into evidence, the Ballis have not raised a fact issue precluding summary
judgment in favor of the Foundation because there is no evidence in the record to
controvert the Foundation’s expert testimony that the 1804 Document was invalid and had
no legal effect under Spanish colonial law. Even if the 1804 Document is considered as
summary judgment evidence, the Ballis have failed to show that the trial court’s traditional
summary judgment was improper because they failed to produce any summary judgment
evidence establishing the validity and legal effect of the 1804 Document. The expert
reports produced by the Foundation were the only evidence before the trial court on this
issue, and they state that the 1804 Document was invalid and had no legal effect. 
Consequently, the Ballis failed to raise a genuine issue of material fact on the Foundation’s
claims of superior title and presumed grant. The Ballis’ fourth and fifth issues are
overruled.
III. Late-Filed Evidence 
          In their sixth and final issue, to which the Foundation has failed to respond, the
Ballis argue that the trial court committed reversible error by allowing the Foundation to file
summary judgment evidence less than twenty-one days before the summary judgment
hearing. The Ballis cite rule 166a(c), which states, “Except on leave of court, with notice
to opposing counsel, the motion and any supporting affidavits shall be filed and served at
least twenty-one days before the time specified for the hearing.” Tex. R. Civ. P. 166a(c). 
          After reviewing the Ballis’ argument and the record, we conclude that the twenty-one
day limit specified in rule 166a(c) is inapplicable to the instant issue. The “late-filed”
evidence of which the Ballis complain was not attached to a motion for summary judgment,
a response, or a reply; it was attached to a motion to exclude testimony offered by the
Ballis. Accordingly, the “late-filed” evidence did not become part of the summary judgment
record, as it was offered solely to challenge the admissibility of certain summary judgment
evidence produced by the Ballis. There is no indication in the record that the trial court
relied upon the “late filed” evidence in rendering a summary judgment for the Foundation. 
In fact, the record indicates that the trial court used the “late filed” evidence to determine
the threshold question of whether the Ballis’ evidence was admissible. We find it
noteworthy that counsel for the Ballis did not object to the timeliness of the motion to
exclude to which the “late-filed” evidence was attached. We overrule the Ballis’ sixth issue. 
And in doing so, we note that even if the late-filed evidence had become part of the
summary judgment record, we would conclude that it was merely cumulative of other
evidence that was timely filed. Accordingly, any error in its admission would not be
reversible error. See Tex. R. App. P. 44.1(a); Reina v. Gen. Accident Fire & Life Assurance
Corp., 611 S.W.2d 415, 417 (Tex. 1981) (stating there is no reversible error if admissibility
ruling involves cumulative evidence). 
IV. Attorney’s Fees
          The Foundation has also appealed from the trial court’s decision, asserting that the
trial court erred in (1) determining that attorney’s fees could not be recovered under the
declaratory judgment act because the declaratory relief sought related to an ownership
interest in land and (2) subsequently granting the Ballis’ motion for summary judgment as
to the Foundation’s claim for attorney’s fees. 
          The Texas Declaratory Judgment Act provides that an interested party to a deed
“may have determined any question of construction or validity arising under the instrument
. . . and obtain a declaration of rights, status or other legal relations thereunder.” Tex. Civ.
Prac. & Rem. Code Ann. § 37.004(a) (Vernon 1997). The Act also provides for the award
of attorney’s fees and costs to the prevailing party. Id. § 37.009. Nevertheless, if the
interested party’s suit is in reality one for recovery of land based on an equitable title, the
action brought is considered a trespass-to-try-title suit and is not an action for declaratory
judgment. See Tex. Prop. Code Ann. § 22.001(a) (Vernon 2000) (“A trespass to try title
action is the method of determining title to . . . real property.”) (emphasis added); Jordan
v. Exxon Corp., 802 S.W.2d 880, 883 (Tex. App.—Texarkana 1991, no writ) (“Any suit that
involves a dispute over the title to land is, in effect, an action in trespass to try title.”). 
          As the Texas Supreme Court clarified in Martin v. Amerman, 133 S.W.3d 262, 267
(Tex. 2004), how a case is pled is irrelevant, for so long as the underlying nature of the
case involves determination of title, the case is governed by the trespass-to-try-title statute
and attorney’s fees cannot be recovered. See also Dewhurst, 90 S.W.3d at 289 (“The
dispute in the present case is over title . . . and the Foundation’s claim for declaratory relief
is merely incidental to the title issues. In such circumstances, the Act does not authorize
an award of attorney fees.”).
          In a letter to the parties explaining the basis for its decisions on the various motions
before it, the trial court explained that although the Foundation argued that its suit is not
a trespass-to-try-title suit: 
[Its claim] is so intermingled with the issue of its own title, more than a small
measure in defense against [the Ballis’] trespass-to-try-title [counterclaim]
that its suit sounds in trespass-to-try-title and involves title issues so
substantially that I cannot separate them. Therefore I will sustain [the Ballis’]
motion for summary judgment on this issue.

          We agree with the trial court and conclude that the Ballis proved as a matter of law
that the Foundation could not recover attorney’s fees because this suit is a title dispute
between two parties with competing claims of conveyance and inheritance and, as such,
is governed by the property code, not the declaratory judgment act. See Martin, 133
S.W.3d at 267 (concluding that the trespass-to-try-title statute governs the parties’
substantive claims in property dispute); McRae Exploration & Prod., Inc. v. Reserve
Petroleum Co., 962 S.W.2d 676, 685 (Tex. App.—Waco 1998, writ denied). Accordingly,
the Foundation’s issues on appeal are overruled. 
V. Conclusion 
          The judgment of the trial court is affirmed. 

                                                                                      _______________________
                                                                                      DORI CONTRERAS GARZA,
                                                                                      Justice
 
 
Opinion delivered and filed 
this the 24th day of March, 2005.