IN THE SUPREME COURT OF TEXAS















IN THE SUPREME COURT OF TEXAS

 

════════════

No. 05-0653

════════════

 

Gilbert Kerlin, Individually,
Gilbert Kerlin, Trustee, 

Windward Oil & Gas Corp.,
and Pi Corp., Petitioners,

 

v.

 

Concepcion Sauceda, et al.,
II, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District of
Texas

════════════════════════════════════════════════════

 

 

Argued April 22,
2008

 

 

            Justice Brister, joined by Justice Hecht, Justice Medina, and Justice Willett, concurring.

 

            I concur in the Court’s judgment. I
understand the Court’s reluctance to overrule one of our cases, but 40 years
ago Justices Pope, Greenhill, and Steakley were right that Vaughn v. Deitz
was wrongly decided.[1]
Our “absent from the state” statute arose in 1841, a long time before
minimum-contacts analysis did; as almost every other state has decided, a
person whose minimum contacts make them amenable to suit in a state cannot
fairly be said to be “absent from the state.”[2] Indeed, such a construction would face
serious constitutional problems.[3]

            It is unclear why the Court is
afraid to say so. No one has argued that we should distinguish rather than
overrule Vaughn for a very good reason: it is impossible. Both the
long-arm business statute here and the long-arm motorist statute in Vaughn are
part of the same chapter in the Civil Practices and Remedies Code, and both
make nonresidents amenable to suit in Texas.
Indeed, one can sue a nonresident motorist under either: as a party to a
collision,[4]
or as one who has conducted business by “commit[ting]
a tort in whole or in part in this state.”[5] Does the Court mean to say today that
limitations is tolled under this Code’s section 16.063 if the plaintiff serves
the Secretary of State,[6]
but not if the plaintiff serves the Transportation Commission Chairman?[7]

            But the court of appeals’ opinion
also purports to say a lot about several other legal doctrines (there are 95
headnotes in the Southwestern Reporter), some of which we have not addressed in
a very long time, and every one of which the court of
appeals misapplied. If experienced judges can make such mistakes, others may
follow and the jurisprudence of the state become
disoriented.[8]
I would straighten a few of these out.

            The primary mistake made by the
courts below was forgetting that the transaction on which this suit is based
was a sale. The heirs of Juan Jose Balli (nephew of the Roman Catholic
priest after whom Padre Island is named) sold any interest they might have in
that island in 1938 to Gilbert Kerlin in 11 duly recorded quitclaim deeds,[9] retaining only a 1/512th interest[10] in any minerals:

 

 

class=Section2> 

KNOW ALL MEN BY
THESE PRESENTS that the undersigned, [each of the Balli heirs], for and in consideration
of the sum of $10.00 cash in hand to us paid by Gilbert Kerlin, trustee . . .
and other valuable considerations, the receipt of all of which is hereby
acknowledged and confessed, have GRANTED, SOLD AND CONVEYED and by these
presents do GRANT, SELL AND CONVEY, unto the said Gilbert Kerlin, trustee, all
of our undivided interest in and to all that certain tract of land situated in
the counties of Cameron, Willacy, Kenedy, Kleberg and Nueces, in the State of
Texas, commonly known as PADRE ISLAND. . . . It being our intention to convey
all the interest which we have in the hereinabove described premises, and each
and every part thereof, by reason of our being the lawful heirs of the said
Juan Jose Balli, irrespective of the acreage or quantity thereof, save and
except that there is specifically reserved to us a one-sixty-fourth (1/64th) of
the royalty of one-eighth (1/8th) of any and all oil and/or gas or other
minerals in, on or under our pro rata interest in the above described premises.

 

 

Keeping this
simple fact in mind, all of the Plaintiffs’ claims — and the 15 years of
litigation that have followed — collapse in a heap.

The
Heirs Had Nothing to Sell

            Juan Jose Balli sold his interests
in Padre Island to Santiago Morales in 1830.
This Court so held in 1944 in State v. Balli.[11] Balli’s heirs have never lived on Padre Island, never worked it, never
paid taxes on it. Their sole claim to title — that Balli and Morales rescinded
their sale — was rejected by this Court in State v. Balli.[12] 

            But even assuming that holding was
not binding on these heirs, any claim the heirs had to Padre
 Island was extinguished by a default judgment in 1928 in Havre
v. Dunn. There, all Balli heirs known and unknown (the ancestors and
privies of all current claimants) were served by publication in a case
regarding title to these parts of Padre Island.
When none of the Balli heirs appeared, all were defaulted. One non-Balli
claimant filed a motion for new trial within the two-year period for setting
aside a default served by publication,[13]
but none of the Balli heirs did. Thus any interest the heirs held in Padre Island was extinguished in 1928, ten years before
they met Gilbert Kerlin.

Estoppel
By Deed Does Not Apply

            The courts below disregarded these
facts based on an “estoppel by deed” — that because Kerlin bought quitclaim
deeds from the heirs and used them in the hope of gaining something thereby, he
was estopped to claim that they conveyed him nothing.[14] While we have not written much about
estoppel by deed in a long time, the 2003 Restatement
(Third) of Property describes at least two reasons why estoppel by deed
has nothing to do with this case:

 

Under the doctrine
of estoppel by deed, a purported transfer of land that the transferor does not
own becomes enforceable and takes place automatically if the land is later
acquired, but only if the deed represents to the grantee that title of a
specified quality is being conveyed, which most warranty deeds but few
quitclaim deeds do.[15]

 

 

This case does
not involve after-acquired title, no Balli heir having bought or inherited any
part of Padre Island in over 170 years. Even
if they had, the quitclaim deeds they gave Kerlin did not warrant title, so
estoppel by deed could never apply.[16]

            Relying on a court of civil appeals
case from 1892, the court of appeals extended estoppel by deed to the much
broader proposition that “‘all parties to a deed are bound by the recitals
therein.’”[17]
But even assuming that is true, the heirs’ deeds contained no recitals of
ownership or title; they were mere quitclaims.[18] While the deeds reserved a 1/512th
royalty, Kerlin never denied that reservation; he was trying to deny that the
heirs had any interest to convey before the reservation, a matter as to
which the quitclaim deeds were silent. As nothing about Kerlin’s claim was
inconsistent with the deeds, the courts below erred in holding they created
title in the heirs.

The
Heirs’ Royalty Claim Is Against Someone Else

            But even assuming all this could be
ignored and the heirs held a 1/512th royalty, they have sued the wrong man. The
heirs’ claim for royalties lies against the operators who have been producing
minerals from those properties since 1938. That was not Kerlin; he released any
interest he had in those same properties in 1942. The lands Kerlin got in the
1942 settlement were in southern Padre Island and Nueces County
— lands Juan Jose Balli never even arguably owned. The heirs’ tiny royalty
interest did not follow Kerlin wherever he went; if the heirs have a royalty
claim, it is against someone else.

The
Settlement Did Not Affect the Heirs’ Claims

            But even assuming the heirs had some
interest to claim against Kerlin, Kerlin’s 1942 settlement in Havre v. Dunn
did not touch it. “In order to effectively release a claim in Texas, the releasing instrument must
‘mention’ the claim to be released.”[19]
Kerlin released a number of claims he had bought from others in the Havre v.
Dunn settlement, but the settlement documents make no mention of releasing
claims arising through the Balli heirs. 

            The heirs’ only evidence that the
settlement involved their claim is an unaccepted settlement demand sent by
Kerlin’s attorney, F.W. Seabury, asking for 7,500 acres “[f]or the Juan Jose
interest.” But that wasn’t for the heirs — Kerlin had bought the “Juan
Jose interest” for himself, the heirs retaining only a tiny royalty. Moreover,
a settlement offer in Texas
courts is “not admissible to prove liability for or invalidity of [a] claim or
its amount.”[20]
The court of appeals held Kerlin had waived this objection by testifying about
the offer after it was admitted;[21]
but since the trial court had granted him a running objection, he “was entitled
to defend [him]self by explaining, rebutting, or demonstrating the untruthfulness
of the objectionable evidence without waiving [his] objection.”[22] As a matter of law, Kerlin got nothing
for the heirs’ claims in the settlement documents, and there is no evidence
otherwise.

            The heirs gained nothing from the
settlement of Havre v. Dunn because they never appeared or made any
claims in the case. The claims Kerlin made were his own, which he had
bought and owned outright; he could neither have made nor settled the heirs’
tiny mineral claim because he did not own it.

Kerlin
Was Not the Heirs’ Fiduciary

            Like any other buyer, Kerlin owed
his sellers (the heirs) no fiduciary duty after buying their interests.[23] The court of appeals located a fiduciary
duty in the duty a holder of executive rights owes to royalty owners.[24] But this duty is limited to benefits
that accrue from a mineral lease, not a sale;[25] as Texas law has long recognized, leasing
minerals imposes duties that selling them does not.[26] Texas
law has never required an owner who is selling a mineral interest to negotiate
a sales price for royalty owners who are not selling. The court of
appeals inexplicably held that Kerlin violated a fiduciary duty by not giving
the Ballis some of what he got from selling his own interest rather than
theirs. There is no such duty.

Having
Your Own Attorney is not a Conspiracy

            Nor could Kerlin be liable for
conspiring with Seabury, his own attorney, to commit fraud or breach the
latter’s fiduciary duty to the heirs because the heirs were never Seabury’s
clients. It is undisputed Seabury never met or spoke with any of the Balli
heirs; how exactly could he have become their attorney? And if he was not their
attorney, how exactly could failing to disclose something to them be fraud or
breach a fiduciary duty? It is true that Seabury filed an answer in Havre v.
Dunn in the name of each of the heirs, but it has long been the rule that
an assignee (Kerlin) can sue in the name of his assignors (the heirs).[27] Because the heirs had been named and
served by publication in Havre v. Dunn, it was perfectly proper for
Seabury’s bill of review seeking to reopen that suit to be filed in their
names, even though the title claims (if any) now belonged to Kerlin. As Seabury
was not the heirs’ attorney, he owed them no fiduciary duty or duty to disclose
anything that occurred.

Conclusion

            Recent years have seen a number of
suits in South Texas seeking to reopen title
claims to lands that have been dormant for decades or centuries.[28] The court of appeals’ opinion here will
go a long way toward encouraging such suits, should someone make the mistake of
considering it a correct statement of Texas
law. I would disabuse them of that notion.

 

 

            __________________________

            Scott Brister

            Justice

 

OPINION
DELIVERED: August 29, 2008

 














[1]
430 S.W.2d 487, 491 (Tex. 1968) (“The Texas tolling statute . . . is not unique
or different from those of other states, almost all of which have held that the
presence or absence of a defendant must be solved in terms of jurisdiction over
the person.”) (Pope, J., dissenting).





[2] Id.





[3] See
Bendix Autolite Corp. v. Midwesco Enters., Inc., 486 U.S. 888,
891-93 (1988) (holding states cannot condition limitations statutes on
requirement that nonresidents appoint a local agent for service).





[4] Tex. Civ. Prac. & Rem.
Code § 17.062(a).





[5] Id. § 17.042(2).





[6] See
id. § 17.044(a).





[7] See
id. § 17.062(a).





[8] See
Tex. Gov’t Code § 22.001(a)(6)
(“The supreme court has appellate jurisdiction . . . extending to all questions
of law arising in . . . any other case in which it appears that an error of law
has been committed by the court of appeals, and that error is of such
importance to the jurisprudence of the state that, in the opinion of the
supreme court, it requires correction, but excluding those cases in which the
jurisdiction of the court of appeals is made final by statute.”).





[9]
Apparently 12 deeds were signed but only 11 were recorded as one appeared to be
a duplicate. See 164 S.W.3d 892, 905.





[10]
The deeds reserve “a one-sixty-fourth (1/64th) of the royalty of one-eighth
(1/8th) of any and all oil and/or gas or other minerals . . . ,” yielding a
1/512th royalty interest. 





[11]
See 190 S.W.2d 71, 81 (Tex. 1944) (“On January 19, 1830, Juan Jose Balli
. . . conveyed to Santiago Morales his original one-half of Padre Island,
together with one-half league more that he had acquired by inheritance from his
uncle, the Priest Nicolas Balli.”).





[12]
Id. at
87 (“It may be inferred from these proceedings that Balli cleared his title to
the satisfaction of Morales.”).





[13]
See Tex. R.
Civ. P. 329(a).





[14] 164 S.W.3d at 915–16.





[15]
Restatement (Third) of Property: Wills
& Other Donative Transfers § 6.1, comt. f
(2003).





[16]
See Houston
First Am. Sav. v. Musick, 650 S.W.2d 764, 770 (Tex. 1983) (“[W]hen one
conveys land by warranty of title, or in such a manner as to be estopped to
dispute the title of his grantee, a title subsequently acquired to that land
will pass eo instante to his warrantee, binding both the warrantor and
his heirs and subsequent purchasers from either.”); Robinson v. Douthit,
64 Tex. 101, 105 (1885) (finding estoppel by deed because donor’s deed was
“neither in form nor substance a mere quitclaim”); see also Restatement (First) of Property §§ 166,
167 (noting that “a quitclaim deed . . . affords no foundation for either an
estoppel by deed or an equitable transfer”); 1 H. Williams & C. Meyers, Oil and Gas Law § 311.1, at
583–84 (noting estoppel by deed is likely inapplicable to a quitclaim); M.
Benjamin Cowan, Venue for Offshore Environmental Crimes: The Seaward Limits
of the Federal Judicial Districts, 49 Vand.
L. Rev. 825, 856 n.165 (1996) (“Quitclaim deeds by definition contain no
warranties of title, and as such are categorically excepted from the doctrine
of estoppel by deed.”); Lawrence W. Waggoner, Reformulating the Structure of
Estates: A Proposal for Legislative Action, 85 Harv. L. Rev. 729, 745 n.52 (1972)
(“[E]stoppel by deed is invoked in law when there is an attempted transfer by
warranty deed.”).





[17]
164 S.W.3d at 915 (quoting Wallace v. Pruitt, 20 S.W. 728, 728–29 (Tex.
Civ. App.—Corpus Christi 1892, no writ). 





[18]
See Geodyne Energy Income Prod. P’ship I-E v. Newton Corp., 161 S.W.3d 482, 486 (Tex. 2005) (“A warranty deed to land conveys
property; a quitclaim deed conveys the grantor’s rights in that property, if
any.”).





[19]
Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991).





[20]
Tex. R. Evid. 408.





[21] 164 S.W.3d at 920.





[22]
Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 4 (Tex. 1986).





[23]
See Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997) (“[T]o impose
[a fiduciary] relationship in a business transaction, the relationship must
exist prior to, and apart from, the agreement made the basis of the suit.”). 





[24]
164 S.W.3d at 916; see Manges v. Guerra, 673 S.W.2d 180, 183 (Tex. 1984) (“[T]he duty
of the executive ... requires the holder of the executive right . . . to
acquire for the non-executive every benefit that he exacts for himself.”); Schlittler
v. Smith, 101 S.W.2d 543, 545 (1937).





[25]
In re Bass, 113 S.W.3d 735, 744 (Tex.
2003).





[26]
See HECI Exploration Co. v. Neel, 982 S.W.2d 881, 889 (Tex. 1998)
(citing Danciger Oil & Ref. Co. of Tex. v. Powell, 154 S.W.2d 632,
635 (Tex. 1941)) (“The decision in Danciger drew a distinction between
oil and gas leases and conveyances with a reservation of mineral
interests. The obvious purpose of a mineral lease is for the lessee to conduct
exploration and drilling within a defined period of time. That is not the case
with conveyances of mineral interests.” (citation
omitted)).





[27]
Tex. Mach. & Equip. Co. v. Gordon Knox Oil & Exploration Co.,
442 S.W.2d 315, 316 (Tex.
1969).





[28]
See, e.g., King Ranch, Inc. v. Chapman, 118 S.W.3d 742 (Tex. 2003); Aguillera
v. John G. and Marie Stella Kenedy Mem’l Found., 162 S.W.3d 689, 692 (Tex.
App.—Corpus Christi 2005, pet. denied).