**Kirk E. MARTIN and Suzanne K. Martin, Petitioners,**

v.

**William M. AMERMAN and Carolyn Frances Amerman, Respondents.**

No. 02–0731.

Supreme Court of Texas.

Argued Oct. 1, 2003.

Decided Feb. 13, 2004.

136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)).

Cathy J. Sheehan, Plunkett & Gibson, Inc., San Antonio, for Amicus Curiae.

Walter D. Snider, Snider & Morgan, L.L.P., Beaumont, for Petitioner.

Richard N. Evans, J. Mitchell Smith, Germer Gertz, L.L.P., Beaumont, for Respondent.

Justice O'NEILL delivered the opinion of the Court.

In this case we must decide whether a trespass-to-try-title action is the exclusive means to resolve a dispute between neighbors over the proper location of a boundary line separating their properties, or whether a declaratory judgment action is also an appropriate way. We hold that the Texas trespass-to-try-title statute governs the parties' substantive rights in this boundary dispute and that they may not proceed under the Texas Declaratory Judgments Act to recover attorney's fees. Accordingly, we affirm the court of appeals' judgment. 83 S.W.3d 858.

## I

This dispute involves locating the proper boundary line between two residential

properties in Beaumont, Texas. In 1987, Kirk and Suzanne Martin purchased a home located on a 2.005–acre tract of land. Some six years later, the Martins erected a chain-link fence along what they believed to be their property's eastern boundary next to a wooded area. In 1997, William and Carolyn Amerman purchased their home on a 1.255–acre tract located to the east and around the corner from the Martins. The disputed boundary line forms the eastern edge of the Martin tract and the western edge of the Amerman tract. In 1998, the Amermans tore down the Martins' fence, believing that it illegally encroached on their property.

Although unable to agree on the boundary's location, the parties do agree that their respective chains of title do not conflict. All of the Martin acreage derives from the Crowell/Nelson grant and all of the Amerman acreage derives from the DeVoss/Pye grant. The dispute in this case arises from two conflicting surveys. The Martins' surveyor, Mark Whiteley, surveyed the Martin property in 1993 and set the northeast corner at a one-and-one-half-inch pipe identified in previous surveys as the proper corner location. Gilbert Johnston, the Amerman's surveyor, conducted his survey of the Amerman tract three years later and placed its northwest corner at a five-eighth-inch rod. The surveyors' differing placement of these corners causes the thirty-foot overlap at issue in this case.

The Martins filed suit seeking a judgment declaring the proper boundary line and granting permanent injunctive relief. They also alleged trespass and wrongful encroachment, adverse possession, trespass to try title, boundary by recognition and acquiescence, and an action to quiet title, but ultimately nonsuited all claims except those for declaratory judgment and to remove the cloud on their title caused by the recorded Johnston survey. The Amermans filed a counterclaim for trespass to try title and also sought injunctive relief. Because the parties agreed that ownership of the disputed thirty-foot strip of land depended upon determining the boundary's proper location on the ground, the case was submitted to the jury solely as a boundary dispute. After hearing testimony about survey methods and the priority placed on different monuments, the jury found that the Martins' surveyor properly placed the boundary and that the Amermans' recorded survey placed a cloud on the Martins' title. The trial court rendered judgment on the jury's verdict and awarded the Martins attorney's fees pursuant to the Texas Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem.Code § 37.009.

The court of appeals affirmed the trial court's judgment in part, but held that, because the boundary dispute involved title to a strip of land, it was in the nature of a trespass-to-try-title action and must be treated as such. 83 S.W.3d at 864. Because the trespass-to-try-title statute does not provide for the recovery of attorney's fees, the court of appeals reversed the Martins' fee award. *Id.* This holding directly conflicts with *Goebel v. Brandley*, 76 S.W.3d 652 (Tex.App. Houston [14th Dist.] 2002, no pet.), in which the court held that a suit to declare a boundary's location may properly be brought as a declaratory judgment action. We granted the Martins' petition for review to resolve this conflict among our courts of appeals.

## II

The Texas Property Code provides that "[a] trespass to try title action is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001. The Texas Declaratory Judgments Act provides that "[a] person

interested under a deed ... may have determined any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem.Code § 37.004(a). The parties disagree about these statutes' application when the sole question before the court involves determining the proper boundary line between adjoining properties.

We have said that boundary disputes *may* be tried as trespass-to-try-title actions, but not that they must. *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex.1982); *Plumb v. Stuessy*, 617 S.W.2d 667, 669 (Tex.1981). We have never considered whether a boundary dispute may also be tried as a declaratory judgment action. These two statutory avenues differ significantly in both their proof elements and the relief they afford.

 The Declaratory Judgments Act provides an efficient vehicle for parties to seek a declaration of rights under certain instruments, while trespass-to-try-title actions involve detailed pleading and proof requirements. *See* Tex.R. Civ. P. 783–809. To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Plumb*, 617 S.W.2d at 668 (citing *Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964)). The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title. *Land*, 377 S.W.2d at 183.

The trespass-to-try-title statute was originally enacted in 1840 to provide a remedy for resolving title issues. Tex. Prop.Code 22.001(a) ("A trespass to try title action is the method of determining title to lands...."). It also eliminated ejectment actions in Texas, which had traditionally been used to restore possession of property to a person legally entitled to it. *See* Tex. Prop.Code 22.001(b); *see generally* 2 Powell on Real Property 246[3] (1991). The statute is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner. *See Standard Oil Co. of Tex. v. Marshall*, 265 F.2d 46, 50 (5th Cir.1959); *City of El Paso v. Long*, 209 S.W.2d 950, 954 (Tex.Civ.App.El Paso 1947, writ ref'd n.r.e.).

The strict pleading and proof requirements applicable to trespass-to-try-title actions have sometimes produced harsh results. *See, e.g., Hunt*, 643 S.W.2d at 679 (holding that Hunt's failure to timely file his abstract showing chain of title was fatal to the trespass-to-try-title action he pled whether or not the case turned factually on the question of boundary), *Id.* at 680 (Sondock, J., concurring) (noting the "unnecessary technicalities" of trespass-to-try-title actions). To lessen these harsh effects, the Court has relaxed the trespass-to-try-title actions formal proof requirements when the sole dispute between the parties involves a boundary's location. *See Plumb*, 617 S.W.2d at 669. In *Plumb*, we recognized that a boundary dispute may be tried by a statutory action of trespass to try title. *Id.* (citing *Schiele v. Kimball*, 113 Tex. 1, 194 S.W. 944 (1917)). In such a case, a recorded deed is sufficient to show an interest in the disputed property without having to prove a formal chain of superior title. *See Plumb*, 617 S.W.2d at 669; *see also Brownlee v. Sexton*, 703 S.W.2d 797, 800 (Tex.App. Dallas 1986, writ refd n.r.e.); *Rocha v. Campos*, 574 S.W.2d 233, 235–36 (Tex.Civ.App. Corpus Christi, 1978, no writ). We articulated a test to determine if a case is one of bound-

ary: "If there would have been no case but for the question of boundary, then the case is necessarily a boundary case even though it may involve questions of title." *Plumb*, 617 S.W.2d at 669. We have never indicated, though, that by lessening the trespass-to-try-title actions more formal proof requirements we intended to make boundary disputes a distinct cause of action. It is over this point that the parties disagree.

The Martins argue that this case does not involve a title dispute as contemplated by the trespass-to-try-title statute because the parties stipulated that their respective chains of title do not overlap. The Martins contend that the court is not determining substantive title rights but is merely declaring the boundary's location between adjoining properties. *See Goebel*, 76 S.W.3d at 656. The Amermans, on the other hand, contend this case is necessarily about title because both parties assert competing claims of ownership to the same thirty-foot strip of land. *See Vanzandt v. Holmes*, 689 S.W.2d 259, 261–62 (Tex.App. Waco 1985, no writ); *Rocha*, 574 S.W.2d at 235. To answer this question, we first examine how the distinction between title and boundary disputes arose.

The distinction between formal trespass-to-try-title actions and disputes involving only a boundary determination was initially drawn as a means to determine whether this Court had subject matter jurisdiction over the case. Before 1929, we had no jurisdiction over appeals involving boundary determinations, but did have jurisdiction over appeals that involved questions of title. Act of Apr. 13, 1892, 22nd Leg., 1st C.S., ch. 15, 1892 Tex. Gen. Laws 25, *amended by* Act of Mar. 2, 1929, 41st Leg.,

R.S., ch. 33 § 1, 1929 Tex. Gen. Laws 68.[1] In determining the parameters of our jurisdiction, we explained that "[e]very action to try title to land may involve a question of boundary, but ... this did not of itself make a boundary case." *Cox v. Finks*, 91 Tex. 318, 43 S.W. 1, 1 (1897). We concluded that a case was one of boundary if the "whole litigation ... gr[e]w out of a question of boundary...." *Id.* at 2. Thus, we initially defined a "boundary case" not for the purpose of creating a separate cause of action but to respect the Legislature's statutory constraints on our jurisdiction. These constraints were abolished in 1929, and the jurisdictional underpinnings of the title/boundary distinction disappeared.

The distinction between a title action and a boundary dispute came before the Court in a different context in *Permian Oil Co. v. Smith*, 129 Tex. 413, 107 S.W.2d 564 (1937). There, we were asked to distinguish between title cases and boundary disputes for res judicata purposes. *Permian* concerned two suits between different parties involving the same piece of property. *Id.* at 566. The first suit resolved a boundary question. The parties to the later action claimed that the former boundary suit did not operate as a muniment of title and thus did not bar their subsequent title suit. *Id.* We recognized the longstanding jurisdictional distinction between title actions and boundary disputes, but concluded that this distinction was immaterial for purposes of determining the substantive res judicata question. *Id.* at 568 (noting that previous cases "were undoubtedly influenced by the fact

---

1. The judgment of the courts of civil appeals shall be conclusive in all cases on the facts of the case and a judgment of such courts shall be conclusive on facts and law in the following cases; nor shall a writ of error be allowed thereto from the supreme court, to-wit: ...

(2) All cases of boundary. Act of Apr. 13, 1892, 22nd Leg., 1st C.S., ch. 15, 1892 Tex. Gen. Laws 25, *amended by* Act of Mar. 2, 1929, 41st Leg., R.S., ch. 33 § 1, 1929 Tex. Gen. Laws 68.

that they were construing the effect of the [jurisdictional] statute"). Without the jurisdictional limitation guiding our analysis, we were unwilling to recognize a distinction between statutory trespass-to-try-title actions and boundary disputes simply because they turned on different evidentiary facts. *Id.* That location of a boundary was the sole issue in the first suit, we held, did not mean that title was not also at issue:

> The fact that on the trial boundary was the sole controversy controlling title does not keep the former judgment, which disposed of title, from binding the parties and their privies. In trespass to try title determination of the outcome of the suit through the fact of boundary does not alter the cause of action plead [sic] and disposed of by the judgment.

*Id.* The same principle was earlier stated in *Freeman v. McAninch,* where the Court held:

> [T]he fact that the determination of [title] may have depended on a question of boundary could not change the character of the vital issue in the case, for that was but a question of fact, to be considered like any other fact in determining whether the issue of title to the land should be decided in favor of the one party or the other.... The issue presented by the pleadings, and determined by the judgment, was one of title; and that ... this depended on the fact of true locality of the boundary between the surveys, could not change the character of that issue.

87 Tex. 132, 27 S.W. 97, 98–100 (1894).

■ Thus, although we have recognized a procedural distinction between trespass-to-try-title actions and boundary disputes for jurisdictional and evidentiary purposes, we have declined to draw a substantive distinction for purposes of determining claim preclusion. As we said in *Freeman,* "[q]uestions of boundary are never the subjects of litigation within themselves, but become so only when some right or title is thought to depend on their determination...." *Id.* at 98. A boundary determination necessarily involves the question of title, else the parties would gain nothing by the judgment. *Id.* at 99 (stating that "if the issue of title ... was not determined ... it [would be] wholly unimportant where the boundary between the surveys was").

■ For the foregoing reasons, we again decline to recognize a substantive distinction between title and boundary issues, this time for the purpose of allowing alternative relief under the Declaratory Judgments Act. We conclude, as did the court of appeals, that the trespass-to-try-title statute governs the parties' substantive claims in this case. The statute expressly provides that it is "*the* method for determining title to ... real property." TEX. PROP.CODE 22.001(a) (emphasis added); *see Ely v. Briley,* 959 S.W.2d 723, 727 (Tex.App.Austin 1998, no pet.); *Kennesaw Life & Accid. Ins. Co. v. Goss,* 694 S.W.2d 115, 118 (Tex.App. Houston [14th Dist.] 1985, writ ref'd n.r.e.). Accordingly, the Martins may not proceed alternatively under the Declaratory Judgments Act to recover their attorney's fees.

The Martins rely on language in *Brainard v. State,* 12 S.W.3d 6 (Tex.1999), to support their argument that a declaratory judgment action is a viable method to resolve a boundary dispute. In *Brainard,* we were called upon to determine a boundary line as described by conflicting surveys. *Id.* at 12. We held that an award of attorneys fees was not appropriate because the suit arose out of a specific legislative resolution granting permission to sue the State, and that permission did not provide for a fee award. *Id.* at 29. We noted, however, that "a [declaratory judgment] is certainly one way to resolve a

boundary dispute....” *Id.* This statement, which was clearly dicta, has understandably generated confusion among our courts of appeals. *Compare Goebel,* 76 S.W.3d at 655–56 *with Amerman,* 83 S.W.3d at 863–64. More recently, in a case involving determination of a shoreline boundary, we properly termed the issue one of title and rejected the notion that declaratory relief was also available under the Declaratory Judgments Act:

> [T]he dispute in the present case is over title, not an enactment, and the Foundation's claim for declaratory relief [locating the shoreline boundary] is merely incidental to the title issues. In such circumstances, the Act does not authorize an award of attorney fees against the State.

*John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 289 (Tex.2002). We disapprove our statement to the contrary, albeit dicta, in *Brainard.* 12 S.W.3d at 29. To the extent our courts of appeals have expressed a different view, we disapprove of those decisions. *See Goebel,* 76 S.W.3d 652; *see also Tarrant County v. Denton County,* 87 S.W.3d 159 (Tex.App. Fort Worth 2002, pet. denied) (allowing boundary suits to be tried as declaratory-judgment actions without deciding the issue); *Mortgage Inv. Co. of El Paso v. Bauer,* 493 S.W.2d 339 (Tex.Civ. App.-El Paso 1973, writ ref'd n.r.e.) (same).

### III

■ The Amermans, as cross-petitioners, contend that the trial court erred by failing to submit the case to the jury in the formal manner that traditional trespass-to-try-title claims require. The court of appeals concluded that the Amermans waived this point, and we agree. 83 S.W.3d at 861. Moreover, as we have said, the trespass-to-try-title action's more formal proof requirements do not apply in boundary disputes when there would have been no case but for the question of boundary. *Plumb,* 617 S.W.2d at 669.

The Amermans further contend that the evidence is legally insufficient to support the jury's determination that the proper boundary line was that set by the Martins surveyor. We disagree, for the reasons the court of appeals expressed. 83 S.W.3d at 862–63.

### IV

For the foregoing reasons, we affirm the court of appeals' judgment. 83 S.W.3d 858.