United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 12, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-40901

SUNWEST OPERATING COMPANY, LLC,

Plaintiff - Counter Defendant-Appellant,

VERSUS

CLASSIC OIL & GAS, INC., ET AL.,

Defendants,

SAM B. COBB, JR.,

Defendant-Appellee,

SCOTT L. SUMMERS; DOVE CREEK ENERGY, INC.,

Defendants - Counter Claimants - Appellees.

Appeal from the United States District Court
for the Eastern District of Texas
6:02-590-LED

Before DAVIS, STEWART AND DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

This case presents a dispute over a claim to leasehold mineral interests arising under two

oil and gas leases. The district court resolved the issues on cross-motions for summary judgment

interpreting two assignments of the leases in the chain of title. Based on our reading of the

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

assignments which the parties have stipulated are unambiguous, we concur with the judgment of the district court in favor of the defendants.

I.

In August of 1975, Joseph O. Tompkins and others executed an Oil, Gas and Mineral Lease in favor of Little Wolf, Inc. covering 76.18 acres in Panola County, Texas (the "J. Tompkins Lease"). In December 1975, A.T. Tompkins and J.C. Tompkins executed an Oil, Gas and Mineral Lease in favor of Floyd G. Miller, Jr. covering 64.56 acres in Panola County, Texas (the "A.T. Tompkins Lease")( the J. Tompkins Lease and the A.T. Tompkins Leases are collectively referred to as the "Tompkins Leases"). Both leases have been continuously held in effect by production.

In April 1979, portions of the land covered by the Tompkins Leases were incorporated into the Velma Daniels Gas Unit. A 20-acre tract covered by the J. Tompkins Lease and a 27.01 acre tract covered by the A.T. Tompkins Lease were not included in the Velma Daniels Gas Unit (the "Excluded Acreage"). By various assignments, Snyder Oil Company ("Snyder") acquired a majority working interest in the Tompkins Leases, including rights to the Excluded Acreage. Snyder's interest was subject to a Net Profits Interest which had been granted by Snyder's predecessor in title to Texas American Bank by a conveyance dated June 1988 (the "Net Profits Conveyance").

In February 1995, Snyder agreed to sell a package of oil and gas properties, including the Tompkins Leases, to Enron Oil & Gas Co. Snyder executed a Purchase Agreement with Enron. Snyder and Bank One Texas, N.A. ("Bank One"), as successor in interest to Texas American Bank, executed an Assignment of Oil, Gas and Mineral Leases including the Tompkins Leases

2

(the "Snyder Assignment").

In August 1995, Enron assigned all of its right, title and interest in the Tompkins Leases to Sunwest, using the same property description for the leases as was used in the Snyder Assignment (the "Enron Assignment"). In April 2002, Sunwest entered into a farmout agreement in favor of Classic Oil & Gas, Inc. ("Classic"). The farmout agreement covered only that portion of the Tompkins Leases outside of the Velma Daniels Gas Unit, i.e., the Excluded Acreage. Pursuant to the farmout agreement, Sunwest executed an assignment of the relevant portions of the leases in favor of Classic, retaining an overriding royalty interest in the Tompkins Trust Gas Unit, which included the Excluded Acreage. Classic then drilled the Tompkins Trust Gas Unit #1 well on the Excluded Acreage which is covered by the farmout agreement. The well produced. Sunwest claims that it is owed its retained override in the well, which Classic refuses to pay.

Sunwest filed suit seeking declaratory judgment that it is the owner of the overriding royalty interest in the Excluded Acreage. Defendants Dove Creek Energy, Inc. ("Dove Creek") and Scott L. Summers ("Summers") filed an answer and counterclaim, seeking a declaratory judgment, arguing that the Snyder Assignment and the Enron Assignment did not convey the Excluded Acreage claimed by Sunwest. Dove Creek and Summers claim a competing mineral interest on the Excluded Acreage.[2] In its answer and amended complaint, Sunwest also raised claims against defendant Sam B. Cobb, Jr., an attorney who had previously represented Dove Creek, Summers and others, for negligent misrepresentation relating to an amendment of the

---

[2]Summers and Dove Creek asserted an ownership interest in the Excluded Acreage to Classic, however they never sought any determination of their interest in the District Court and did not present any evidence of the leases or chain of title to support any ownership claim. Their position in this litigation is simply against Sunwest's ownership claim.

Tompkins Leases.

The case was decided by the district court on motions for summary judgment. Although the Classic farmout agreement sets out the relationship of the parties to this appeal, the main issue in this case relates to the interpretation of the Snyder Assignment and the Enron Assignment. The parties stipulated that both assignments are unambiguous. The district court ruled that Sunwest acquired no interest in the Excluded Acreage through the Snyder and Enron Assignments. Although the district court also initially denied both parties' motions for summary judgment on Sunwest's claim for negligent misrepresentation against Cobb, after consideration of motions by the parties, it granted summary judgment in favor of Cobb. Sunwest appeals.

II.

The parties agree that the dispositive issue in this case is whether Sunwest acquired leasehold rights in the Excluded Acreage as a result of the Snyder Assignment and the Enron Assignment. We begin this inquiry within the limitations set by the parties. They have stipulated that the assignments in question are unambiguous. Accordingly, our duty when construing an unambiguous instrument is to ascertain the intent of the parties from all the language in the deed applying a rule of construction known as the "four corners" rule. Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991). When seeking to ascertain the intent of the parties, we must attempt to harmonize all parts of the deed, construing the instrument to give effect to all of its provisions. Id. As this case was decided on motions for summary judgment, we review the issues *de novo* applying the same standards as the district court. Boston Old Colony Ins. Co. v. Tiner Assoc., 288 F.3d 222, 229 (5th Cir. 2002). We can affirm the district court if we agree that the Snyder Assignment and the Enron Assignment conveyed only oil and gas leasehold rights within the

4

Velma Daniels Gas Unit, and not the Excluded Acreage.

III.

The Recitals in both the Snyder and Enron Assignments are identical in all material respects and read as follows:

1.      Assignor owns an interest in the oil and gas leases described on Exhibit "A"attached hereto and made a part hereof (the "Leases") which pertain to the Lands described on Exhibit A (the "Lands").
. . .
The Leases, Lands, Equipment, Contracts, Production and Data are all collectively referred to as the "Properties."

6.      Assignor agrees to assign all right, title and interest of Assignor in and to the Properties to Assignee in order to vest Assignee with title in and to the Properties.

The granting clauses in both assignments are also identical.

CONVEYANCE

. . . Assignor does hereby GRANT, BARGAIN, SELL, TRANSFER, ASSIGN and CONVEY to Assignee, all of Assignor's right, title and interest, including any and all overriding royalty interest, in and to the Properties, to have and to hold unto Assignee, its successors and assigns, forever.

The same Exhibit A was attached to both the Snyder Assignment, from Snyder to Enron, and the Enron Assignment, from Enron to Sunwest. The exhibit is organized around the seller's interest in several oil and gas units and lists interests in leases falling within the different units. The interest in the Tompkins Leases was described as follows:

Beckville
Panola County, Texas

VELMA DANIELS GAS UNIT NO. 1, 2, 3, 4, 5, 6

Seller's interest in and to acreage allocated to the Velma Daniels Gas Unit No. 1, more particularly described as 641.76 acres, more or less, out of the

Thomas M. Scott Survey, A-594, and the Joseph Spencer Survey, A-590, Panola County, Texas, more particularly described in Gas Unit Designation for the Velma Daniels No. 1, a counterpart of which is recorded in Volume 655, Page 13 of the Deed Records of Panola County, Texas as amended and supplemented:

A list of leases follows including an accurate description of the Tompkins Leases, including their original gross acreage.

Based on our reading of the conveyances, the district court properly concluded that the Snyder Assignment did not effectively convey Snyder's interest in those portions of the Tompkins Leases covering the Excluded Acreage. Because Snyder did not convey an interest in the Excluded Acreage to Enron in the Snyder Assignment, Enron could not convey an interest in that area to Sunwest in the Enron Assignment.

All of the language in the Snyder Assignment is limited by the property description on Exhibit A to the assignment. The description of the Velma Daniels Gas Unit describes the interest conveyed as "Seller's interest in and to acreage **allocated to**" the unit (emphasis added). We see no other interpretation of this language except that it was meant to convey the Properties within the unit and, by omission, exclude the Properties outside the unit. Some other units described on Exhibit A use a similar pattern of description, i.e., indicating that what is being conveyed is Seller's interest in acreage "allocated to" various oil and gas units.

Our reading is reinforced by that fact that some units on Exhibit A describe the interests in oil and gas units being conveyed in a very different manner. For example, the Belle Crawford Unit is described as "Seller's interest in and to the leases described below **and** the Crawford Estate Oil Unit #1, . . . , including, but not limited to, all of Seller's interest in and to the following described leases." Similar descriptions are used for the Tompkins Oil Unit and the Searcy Gas

6

Unit listed on Exhibit A. This form of description expresses the intention to convey Seller's interest in the leases both inside and outside the referenced units in two ways that are not present in the description of the Velma Daniels Gas Unit. First, the interest is described as the leases **and** the unit. Second, the lease listing is introduced by language indicating that property being conveyed includes all of Seller's interest in the listed leases. Because different wording was used to describe interests in the various units, we cannot ignore the meanings that attach to the different descriptions. The description of the Crawford Unit makes it very clear that the entirety of the listed leases are conveyed in addition to Seller's interest in the unit. In contrast, the description of the Velma Daniels Gas Unit, including the Tompkins Leases, is clearly limited to the acreage allocated to the unit.

We recognize that there is some language within the assignments that would support Sunwest's interpretation that the interest in the Excluded Acreage was also conveyed. For example, the assignments convey "all of Assignor's right, title and interest . . . in and to the Properties." The term "Properties" includes the Assignor's interest in "Leases" and "Lands" and it is apparently not disputed that Snyder owned an interest in the Tompkins Leases as to the Excluded Acreage. Sunwest also argues that the Tompkins Leases are listed on Exhibit A under the heading for the Velma Daniels Gas Unit with original acreage amounts that include the Excluded Acreage. The weakness of this argument is that although the term Properties includes "the Leases, Lands," etc., the terms Leases and Lands are defined by reference to Exhibit A. As stated above, Exhibit A limits the interest conveyed in the Tompkins Leases to the "acreage **allocated to** the Velma Daniels Gas Unit." Accordingly, the assignment of "all of Assignor's right, title and interest in and to the Properties" simply means that Snyder conveyed all of its

7

interest in the Tompkins leases as limited by the description on Exhibit A to that area within the Velma Daniels Gas Unit. The phrase cannot alter what constitutes "Properties" to include the Excluded Acreage.

Sunwest also points to Exhibit B to the Snyder Assignment which lists the wells being assigned. Exhibit B contains the following statement: "IT IS ASSIGNOR'S INTENTION TO CONVEY ALL RIGHT, TITLE AND INTEREST IN AND TO THE WELLS AND THE LEASES COVERED THEREBY WHETHER OR NOT CORRECTLY REFLECTED ABOVE." The list of wells includes several Daniels Gas Unit wells. However, as pointed out by Sunwest, all of the wells listed are located within the Velma Daniels Gas Unit, not on the Excluded Acreage. We decline to read this description of the wells conveyed by the assignment as altering the description of the lease interests conveyed.

As its final argument based on the four corners of the assignments, Sunwest points out that Bank One joined the Snyder Assignment to convey its Net Profits Interest covering the Tompkins Leases. The assignment contains the following provision:

> Bank One, Texas, N.A., Trustee, does hereby join in this Assignment for the purpose of transferring all of its interest created by that certain Conveyance of Net Profits Overriding Royalty Interest, [recordation information omitted]. . . and does hereby assign to Assignee such interest in consideration of the premises. By such execution, the net profits overriding royalty interest conveyed is hereby merged into and shall become part of the working interest hereby transferred.

In oil and gas law, "merger" is the "extinguishment of a lesser estate by merger into a greater estate when the greater and the lesser estate coincide and meet in one and the same person without any intermediate estate." Williams & Meyers, 8 M Manual of Oil & Gas Terms 116. It is undisputed that Bank One's net profits interest created by the referenced conveyance covered the

8

entirety of the Tompkins Leases, including the Excluded Acreage. Accordingly, the only way Bank One could both convey "all of its interest created by" by the referenced Conveyance of Net Profits Overriding Royalty Interest and have its net profits interest "merged into and . . . become part of the working interest conveyed" is if Snyder conveyed a working interest covering the entirety of the Tompkins Leases. Under the terms of the Snyder Assignment, Bank One, like Snyder, is "Assignor." We read the Snyder Assignment as limiting Bank One's conveyance of the net profits interest to the Leases and Lands described on Exhibit A, which we have determined to exclude the Excluded Acreage. Attempting to harmonize all of the parts of the assignment and give effect to all of its provisions, as directed by Luckel, we conclude that Bank One's stated intention to convey "all of its interest" must be read like the language in the conveyancing paragraph, "all of Assignor's right, title and interest," as limited by the property descriptions on Exhibit A. With this interpretation, Bank One's "net profits overriding royalty interest conveyed" does "merge into and . . . become part of the working interest hereby transferred," however only to the extent of the acreage allocated to the Velma Daniels Gas Unit. This interpretation forecloses Sunwest's argument that the assignments conveyed to it Bank One's net profits interest as to the Excluded Acreage even if we concur with the district court that the working interest in the Tompkins Leases was conveyed only as to the area within the Velma Daniels Gas Unit.

Sunwest takes issue with the district court's characterization of the Net Profits Conveyance as "extraneous evidence" and "not necessary for consideration." Even if we were to consider that document because of its reference in the Snyder Assignment, it does not help Sunwest's cause. The property description attached to the Net Profits Conveyance as Annex A-1 describes the Tompkins Leases as follows:

9

Seller's interest in and to the leases described below and the Velma Daniels Gas Unit No. 1, more particularly described as 641.76 acres, more or less, out of the Thomas M. Scott Survey, A-594, and the Joseph Spencer Survey, A-590, Panola County, Texas, more particularly described in Gas Unit Designation for the Velma Daniels No. 1, a counterpart of which is recorded in Volume 655, Page 13 of the Deed Records of Panola County, Texas as amended and supplemented, which interest Seller warrants and represents is entitled to no less than 0.0 leasehold working interest in said unit to which is attributable no less than 0.374207 of 8/8 of the production from the above described unit; including, but not limited to, all of Seller's interest in and to the following described leases:

A list of leases follows, including an accurate description of the Tompkins Leases, including their original gross acreage. We agree with Sunwest that this language supports a conclusion, apparently undisputed, that Bank One acquired an interest in the Excluded Acreage in the Net Profits Conveyance. However, the contrast between the property description above and that used in the Snyder Assignment, confirms our conclusion that Bank One, like Snyder, did not convey the entirety of its interest in the Tompkins Leases via the very different property description in the Snyder Assignment.[3]

Finally, Sunwest argues that the district court erred by granting declaratory judgment in this case in light of the Texas Supreme Court's decision in Martin v. Amerman, 133 S.W.3d 262 (Tex. 2004). In Martin, the Texas Supreme Court held that a trespass-to-try-title case over a

_____

[3] We understand Sunwest's confusion stemming from comments in the district court's opinion suggesting that Snyder's working interest in the Tompkins Leases covered less that the entire original acreage and/or that the formation of the Velma Daniels Gas Unit somehow affected Snyder's ownership of mineral interests as to the Excluded Acreage prior to Snyder's assignment to Enron. These statements are inconsistent with our reading of the parties' undisputed facts. Also, we need not address Sunwest's argument that the district court improperly relied on the Snyder Purchase Agreement to construe the Snyder Assignment. As we reach the same conclusion as the district court based solely on our interpretation of the unambiguous assignments, we need not attempt to reconcile every argument relied on by the district court. In the summary judgment context, "[w]e may affirm a district court's ruling on summary judgment based on any legally sufficient ground, even one not relied upon by the district court." Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1337 (5th Cir., 1996).

boundary dispute could not be brought under the Texas Declaratory Judgments Act. Id. A trespass-to-try-title action has more stringent pleading and proof requirements than a declaratory judgment action. We agree with the district court that Martin does not control this case because Sunwest was unsuccessful in its quest for judgment that it was the owner of a mineral interest in the Excluded Acreage. Martin also does not apply to Summers' and Dove Creek's counterclaim because they did not seek judgment affirming their own title. Rather they sought a declaratory judgment that the assignments did not convey the Excluded Acreage to Sunwest, which is a proper subject for a declaratory judgment action. Martin recognized that the declaratory judgments act "provides an efficient vehicle for parties to seek a declaration of rights under certain instruments." Id. at 265.

IV.

Based on the foregoing, the district court did not err in entering judgment against Sunwest and in favor of the defendants as to Sunwest's interest in the Excluded Acreage. Sunwest concedes that if the district court's judgment as to the Excluded Acreage is affirmed, its other claims against Dove Creek, Summers and Cobb also fail. Accordingly, the judgment of the district court is AFFIRMED.