

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00105-CV

NORTHWEST INDEPENDENT                                    APPELLANT
SCHOOL DISTRICT

V.

CARROLL INDEPENDENT                                      APPELLEE
SCHOOL DISTRICT

-----------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## CONCURRING AND DISSENTING OPINION
## ON APPELLEE'S MOTION FOR EN BANC RECONSIDERATION

----------

I join in the majority's decision to grant Carroll ISD's (Carroll's) motion for en banc reconsideration and to withdraw the panel's opinion of February 16, 2012. I join in much of the majority's new en banc opinion on reconsideration, specifically its denial of Northwest ISD's (Northwest's) first two issues. Despite

additional evidence developed after this court reversed the trial court's grant of Northwest's first plea to the jurisdiction, I see no reason to revisit those issues.

Where I differ with the majority concerns its sustaining of Northwest's third issue "to the extent that [Carroll] is attempting to contest" the elections to consolidate school districts to create Northwest or "challenge" the commissioners courts' orders that created Northwest in 1949. I disagree that Carroll is, to any extent, contesting the elections creating Northwest in 1948 or collaterally attacking the commissioners courts' orders establishing the southern boundary for Northwest in 1949.

**The issue**

The majority only briefly references the crux of the case in footnote 2 of its opinion. Carroll shares a common boundary with Northwest; the northern boundary of Carroll is the southern boundary of Northwest. Northwest was created by consolidation of several school districts located in Tarrant, Denton, and Wise Counties by 1949 county commissioners courts' orders of those counties, approving elections in each district. Neither the elections nor the orders describe Northwest's southern boundary by a metes and bounds description but, instead, identify its southern boundary only as lying along the Tarrant-Denton County line. The Tarrant County Commissioners Court order that created Carroll in 1959 likewise did not describe Carroll's northern boundary by metes and bounds but referred to that boundary only as the "North Line" of Tarrant County. Nothing in the field notes or orders of 1949 or 1959 describes or

2

defines the common boundary of the school districts as other than the Tarrant-Denton County line.  And nothing in the orders identifies the location of either the county line or the districts' common boundary on the ground.

Contrary to the majority's terminology (used by it to describe Northwest's and Carroll's common boundary), no language in the documents pertaining to the elections or in the field notes or the commissioners courts' orders creating the school districts identifies the location of the districts' common boundary as the "long-honored" boundary, or ties it to the "then-existing" county line.  Those terms in the majority opinion appear only in Northwest's brief.  It is only Northwest's position that this court "moved" the county line from its "historic," "long-accepted" location by our decision in our previous case in which we established the location of the Tarrant-Denton County line, which I address below.  Use of that terminology by the majority gives a misleading impression that this court is assuming as true that a different location, namely, the 1852 "White line," was somehow previously established and should prevail as the districts' mutual boundary rather than the Tarrant-Denton County line because the White line is where representatives of the school districts believed the county line to be when the school districts were created.  But that issue, if it is an issue at all, has yet to be determined, and is not before us on this appeal.[1]  As we observed in our

---

[1]I also disagree with the majority's holding that the orders of the county commissioners courts defining the districts' common boundary are rendered "ambiguous" by this court's 2002 decision defining the location of the Tarrant-Denton County line.  The county commissioners courts agreed to the county line

3

opinion in the first appeal in this case, the precise location of the Tarrant-Denton County line was the subject of a protracted dispute between the two counties resulting in numerous surveys over 150 years ago. *Tarrant Cnty. v. Denton Cnty.*, 87 S.W.3d 159, 161–67 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g), *disapproved on other grounds*, *Martin v. Amerman*, 133 S.W.3d 262, 268 (Tex. 2004), *superseded by* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c) (West 2012). The counties chose to tie the common school district boundary between Northwest and Carroll school districts to the Tarrant-Denton County line when they created the two school districts in 1949. But therein lies the problem. This court's 2002 decision in *Tarrant County v. Denton County* held that the county line was not definitively established on the ground until 2002. *Id.* at 180. Thus, how Northwest could unilaterally arrive at what the majority refers to as the "long-existing districts' boundary line metes and bounds description" that Northwest then filed with the Texas Education Agency and that differs from the Tarrant-Denton County line is not supported by the record before us.

**Our first opinion**

In its first plea to the jurisdiction, Northwest contended (among other grounds as discussed by the majority) that Carroll was seeking to change the

---

where it was established by this court's 2002 opinion. Carroll claims that the language of the orders establishing the boundaries of the districts is clear in defining the districts' common boundary, and Northwest has pled a number of defenses but ambiguity is not one of them. That issue would only concern the merits, rather than jurisdiction, and is premature at this juncture.

4

geographical boundaries separating the two school districts and to transfer to itself Northwest property along with a significant tax base and student population. Northwest argued that the trial court had no jurisdiction because section 13.051 of the Texas Education Code provided the exclusive administrative mechanism for changing school district boundaries by which territory could be "detached from a school district and annexed to another school district that is contiguous to the detached territory." *See* Tex. Educ. Code Ann. § 13.051 (West 1999).

In reversing the trial court's grant of Northwest's plea to the jurisdiction, we expressly rejected Northwest's contention that Carroll was seeking to "change the existing boundary line between the two districts." *Carroll ISD v. Nw. ISD*, 245 S.W.3d 620, 624 (Tex. App.—Fort Worth 2008, pet. denied). We held: "Rather, Carroll ISD is seeking a judicial declaration regarding whether the Disputed Area is in the Carroll ISD or the Northwest ISD." *Id.* We pointed out that Carroll's pleadings alleged that the two school districts had "always defined their joint boundary as coterminous with the Tarrant-Denton County line," that this court in *Tarrant County v. Denton County* had determined that the county line is further north than the two school districts previously believed, and that, consequently, a boundary dispute had arisen between the districts. *Id.* at 624–25. Thus, we held in the first appeal that Carroll

> does not seek to detach and annex the Disputed Area from [Northwest], but seeks only a judicial determination regarding in which of those districts the Disputed Area is, and has always been, located. Accordingly, the trial court erred by granting [Northwest's]

5

plea to the jurisdiction *on the ground that [Carroll] seeks a modification of the existing boundary line between the two districts.*

*Id.* at 625 (emphasis added).

**This Appeal**

In its appeal from the denial of its second plea to the jurisdiction, Northwest again argues that the trial court lacked jurisdiction because Carroll is seeking to "detach" and "annex" the Disputed Area and that the education code provides the exclusive remedy. I agree with the majority's overruling of Northwest's first and second issues, reiterating our holdings in the first appeal that Carroll is not seeking to "detach" or "annex" additional property into its district but, rather, is seeking a judicial declaration of the parties' rights, interests, and obligations in the Disputed Area and the location of the common boundary between the districts, and that these issues may be decided in a declaratory judgment action. I agree that our holdings on these issues are "law of the case" in this appeal.

In its second plea to the jurisdiction, Northwest raised new, alternative grounds for dismissal, urging that Carroll's suit is either an untimely election challenge or an impermissible collateral attack. In its third issue on this appeal, Northwest argues that the elections and orders that created the Northwest school district established the boundaries of Northwest, that Carroll's suit constitutes either a "challenge" to those elections or to the orders approving the elections by seeking to move or change Northwest's southern boundary, and that, to do so, Carroll must have timely filed an election contest within thirty days, failing which

6

the orders of the county commissioners courts declaring the result of those elections—establishing the location of the boundaries of the Northwest school district—cannot be "collaterally attacked" by Carroll. The majority appears to agree with Northwest, in part, by holding that "to the extent [that Carroll] is attempting to contest an election," or to question the commissioners courts' orders creating the school districts and their boundaries, Carroll's objective is an impermissible collateral attack, and "if" Carroll is attempting to change or modify the judgments or orders of the commissioners courts to avoid the result of the 1948 and 1949 elections by now claiming the Disputed Area, this would be an untimely election contest and collateral attack on the orders. The only way Carroll could do that is by seeking authority to actually "move" the Disputed Area from one independent school district to another, according to Northwest. But this is the very same faulty premise that we rejected in the first appeal and again in our first opinion in this appeal, i.e., that Carroll is seeking to "move" the districts' common boundary.

To the extent that the majority is suggesting that Carroll is now seeking to move the boundary line so as to render Carroll's declaratory judgment action an impermissible election contest or collateral attack on the 1949 and 1959 elections and consolidation orders, it is in direct conflict with our holding in the first appeal (involving the education code) that Carroll is *not* seeking to move the common boundary of the two school districts. The majority's assertion is also not correct that Carroll claims that the school districts' common boundary line should "move

7

with" the counties' common line. This is only what Northwest argues that Carroll claims; it is not what Carroll claims. As we recognized in the prior appeal, Carroll is not contending that the districts' common boundary line should "move" with the county line. *Carroll ISD*, 245 S.W.3d at 623.

Most surprisingly, the majority incorrectly implies that Carroll is claiming that the Tarrant-Denton County line itself was "moved" by this court in our 2002 decision. The county line was not "moved." For the Tarrant-Denton county line to have been "moved," there must have been a prior location of the county line established on the ground for it to have "moved" from. Thus, the majority's implicit determination that Carroll is claiming that the county line was moved interjects yet a new assumption, that there was a previously established boundary line between the two counties. This assumption is the same argument made by Denton County that we rejected in our 2002 decision establishing the mutual Tarrant-Denton County line.[2]

---

[2]Carroll has consistently recognized since the outset of its suit that this court did not "move" the Tarrant-Denton County line in 2002. *See, e.g.*, Reply Br. of Carroll in *Carroll ISD v. Nw. ISD*, No. 02-06-00242-CV, 2007 WL 532041, at *2 (Jan. 3, 2007) ("According to Northwest, we are 'seeking to amend the geographic boundaries separating [the two school districts].' . . . But we are not seeking to 'amend' the boundaries or to 'transfer' the Disputed Area. Rather, we say that the county line has been the boundary between the two school districts *from the beginning*."); *see also* Carroll's Appellee's Br. in this appeal, *Nw. ISD v. Carroll ISD*, No. 02-10-00105-CV, 2010 WL 3641581, at *21 (Aug. 31, 2010) (contending that Northwest bases its argument on a "flawed premise—that the decision in *Tarrant County v. Denton County* 'moved' the county line and that we are now seeking to 'move' the school district boundary. . . . *But under Tarrant County v. Denton County, the county line did not move*. Rather, in that case, this

8

**A repeat of history?**

Our 2002 decision set out a history of various attempts to survey and establish portions of the Tarrant-Denton County line, including the crucial northeast corner of Tarrant County that also served as the northwest corner of Dallas County and the southeast corner of Denton County. *Tarrant Cnty.*, 87 S.W.3d at 161–66. Surveys were performed by surveyors William D. Orr in 1850, Warren A. Ferris in 1850, George White in 1852, and A.G. Walker in 1854. *Id.* at 163–66. Because of inconsistencies in those surveys, the passage of time, and deterioration and disappearance of virtually all markers, posts, and dirt mounds as monuments set by White in 1852 (the only prior survey of the entire common boundary between Denton and Tarrant Counties), which came to be known as the "White line," the exact location of the county line on the ground remained uncertain through the years.

Fast forwarding past other surveys and attempts by the counties to find the location of the county line, Denton County requested assistance in 1984 from Dallas and Tarrant Counties to determine the location of their southern county line, and in 1986, those counties together with Collin County entered into an agreement entitled "Interlocal Cooperation Agreement," which stated that its purpose was to ascertain and locate on the ground the northern boundaries of

---

Court held that the location of the county line had never been determined . . . ." (emphasis added)).

Dallas and Tarrant Counties and the southern boundaries of Denton and Collin Counties. *Id.* at 166.

An order of the Denton County Commissioners Court, entitled "Order Providing for the Ascertainment of County Line," approved the agreement, stating "[t]here have been questions regarding the precise location of the boundary line marking the northern boundary of Dallas County where it is common with the southern boundary of Collin County, the southern boundary of Denton County and the point where it is common with the northeastern corner of Tarrant County" and that "'*it appears that said line is not sufficiently definite and well-defined*' but that the line *could be ascertained* and that it is *Denton County's desire to ascertain the location of the boundary line and to mark the same on the ground.*" *Id.* at 170 (emphasis added). By that agreement, each of the four counties, including Denton County, agreed to hire surveyor Don Jackson to "ascertain by actual survey the southern boundary of Denton County, Texas," where it is common with the northern boundary of Tarrant County and to mark and establish said line and the southeastern corner of Denton County. *Id.*

Jackson conducted his survey and prepared field notes locating the boundaries and corners as specifically provided by the order and contracts for his services. *Id.* at 171. Jackson's field notes determined that Ferris and, therefore, White, had *erroneously located* Dallas County's northwest corner and, hence, Tarrant County's northeast corner and the projection of the counties' mutual boundary, some 2200 feet south and 1300 feet east of where it should have

10

been, and he set and monumented those counties' common corner per the interlocal agreement. *Id.* at 171. The counties approved Jackson's survey, and Denton County forwarded it to the General Land Office with a cover letter from the Denton County Judge stating that the Denton County Commissioners Court had approved the reestablishment of the county line "due to an error in surveying in the 1850's." *Id.* at 173.

Shortly thereafter, Denton County denied the validity of the interlocal cooperation agreement and denied that the Jackson survey established the Tarrant-Denton County line pursuant to the agreement. *Id.* at 166. Instead, Denton County took the position that the county line had been previously established along the line that had been surveyed by George White in 1852 (the White line). *Id.* Tarrant County then brought suit to determine the common boundary between the two counties under section 72.009(a) of the Texas Local Government Code. *Id.*; *see* Tex. Loc. Gov't Code Ann. § 72.009(a) (West 2008). Denton County counterclaimed, contending that the 1852 survey by George White had been established under prior law as the true boundary line between the counties. *Tarrant Cnty.*, 87 S.W.3d at 166.

Under section 72.009(a) of the local government code, a district court has jurisdiction over a suit by a county against an adjacent county to establish the location of a common boundary line, but only if the location of the county line has not already been established under prior law. Tex. Loc. Gov't Code Ann. § 72.009(a), (b). Denton County brought its counterclaim pursuant to

11

subsection (b), which states that if a boundary has been established under prior law, that boundary must be declared to be the "true boundary." *Tarrant Cnty.*, 87 S.W.3d at 166–67. The trial court rendered judgment in favor of Denton County, declaring that the White line was the established common county line under prior law. *Id.* at 167. We reversed, holding that, at the time of the interlocal cooperation agreement among the four counties in 1986, the common boundary between Tarrant and Denton Counties was not, by Denton County's own admission and agreement, previously established or "definite and well defined," and we further held that the White line relied upon by Denton County actually lay somewhat to the south of the "true boundary" between the counties, which we determined was the boundary located by surveyor Don Jackson, as agreed and approved by both Tarrant and Denton Counties. *Id.* at 172, 175. Thus, this court did not hold that the county line had been "moved." Rather, we held that the county line was not "sufficiently definite and well defined" and that the Interlocal Cooperation Agreement settled that dispute as to the location of the county line. *Id.* at 172, 173.[3]

---

[3]This court reversed the trial court's judgment, which had adopted the White line and rendered judgment in favor of Tarrant County based on the validity of the Interlocal Cooperation Agreement and the counties' orders approving the agreement and the Jackson survey, and we remanded the cause to the trial court for entry of judgment adopting the Jackson survey and for entry of any other orders necessary for resurveying and remarking the boundary. *Id.* at 179–80. On remand, the trial court signed a modified and corrected judgment on April 6, 2004, appointing Garey Gilley to perform the resurvey and remarking of the boundary. We dismissed an appeal by Denton County from that judgment for want of jurisdiction. *Denton Cnty. v. Tarrant Cnty.*, 139 S.W.3d 22, 24 (Tex.

If the White line had been established as the mutual county line on the ground under prior law, the trial court would not have had jurisdiction under section 72.009(a) of the local government code over the suit for declaratory judgment brought by Tarrant County that resulted in our 2002 decision establishing the true location of the county line. We determined that there was no such location established on the ground prior to this court's 2002 decision, which finally—and for all time—established the true location of the Tarrant-Denton County line.

The majority states that in 2003, after our decision in *Tarrant County* but before the trial court had entered its modified judgment for the resurvey in accordance with our mandate, Northwest filed what the majority describes as the "long-existing districts' boundary line metes and bounds description" with the TEA in accordance with the education code "to protect itself" (from what, the majority does not say). This is not a correct description of Northwest's 2003 resolution. As we specifically stated in our opinion on the first appeal in this case, the resolution filed by Northwest in 2003 unilaterally "*purported* to establish the school district's southern boundary by a metes and bounds description *that*

App.—Fort Worth 2004, pet. denied). While that appeal was pending, the trial court signed an order appointing an additional surveyor to assist Gilley and to "reconfirm and verify" his work. We conditionally granted a writ of mandamus sought by Tarrant County to require the trial court to vacate that order. *In re Tarrant Cnty.*, No. 02-05-00274-CV, 2005 WL 3436582, at *1, 4 (Tex. App.—Fort Worth Dec. 12, 2005, orig. proceeding [mand. denied]) (mem. op.). While that proceeding was still pending, this suit was filed by Carroll ISD on March 1, 2005.

*appears to follow what is known as the 'White line.'"* *Carroll ISD*, 245 S.W.3d at 622 (emphasis added). But, just months before, we had rejected the White line as the true boundary line between the counties in *Tarrant County v. Denton County.* *Tarrant Cnty.*, 87 S.W.3d at 179–80. Carroll countered Northwest's resolution with a letter to the TEA stating that the northern boundary of its district followed the true county line as established by our 2002 decision in *Tarrant County v. Denton County* and then filed this suit to resolve the district boundary dispute from whence these interlocutory appeals from orders on pleas to the jurisdiction by Northwest have emanated. I would overrule Northwest's three issues, affirm the current order denying Northwest's second plea to the jurisdiction, and remand the cause to the trial court.

This leads me to the other concurring and dissenting opinion on this appeal, which inexplicably says the majority opinion holds that Carroll is barred "from asking the trial court on remand for a declaration that the county line established in [the 2002 Tarrant County-Denton County decision] is the district boundary line." I find no hint in the majority opinion that it holds any such thing. If it could possibly be interpreted to so hold, I would vehemently disagree.

The other concurring and dissenting opinion also states that Carroll has not asserted that the districts' dispute where the boundary line is and always has been, nor has it requested a declaration as to about the location of the boundary line. But that is precisely what Carroll asserts and claims. On the first appeal, we carefully analyzed Carroll's pleadings and concluded that Carroll was seeking

14

"a judicial declaration regarding whether the Disputed Area is in the Carroll ISD or the Northwest ISD"; that the two districts "have always defined their joint boundary as coterminous with the Tarrant-Denton County line; that a court has determined that the county line is farther north than the two school districts previously believed; and that, consequently, a boundary dispute has arisen" and that "the relief [Carroll] seeks is not detachment and annexation but a judgment resolving the boundary dispute by declaring what the parties' rights, interests, and obligations are in the Disputed Area." *Carroll ISD*, 245 S.W.3d at 624–25 (footnote omitted). We reiterated that Carroll seeks only a judicial determination regarding in which of these districts the Disputed Area is and always has been located*. Id.* While I fully agree that Carroll cannot seek to avoid, nullify, or change the elections or orders of the commissioners courts, nor may it actually move the Disputed Area from one independent school district to another, I disagree that Carroll is attempting to do so, and I dissent from the majority's sustaining of Northwest's third issue to that extent. I join in the majority's overruling of the remainder of Northwest's third issue.

For all of the reasons stated above and in our opinion on the prior appeal in this case as well as in *Tarrant County v. Denton County*, I would overrule Northwest's three issues, affirm the trial court's denial of Northwest's plea to the

15

jurisdiction, and remand the cause for further proceedings in accordance with our opinion.

/s/ Anne Gardner

ANNE GARDNER
JUSTICE

WALKER and GABRIEL, JJ., join.

DELIVERED: June 19, 2014